# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

CHANEL, INC.,

       Plaintiff,

vs.

REPLICACHANELPRODUCT.COM aka
LUXURYREPLICASBAG.COM; BAGONEER.COM aka
FAXBAGX.COM; CHEAPREPLICASPURSES.COM aka
COPYHANDBAGSSHOP.COM,
FAKECHANELSHOPPING.COM,
POPULARITYBAGS.COM,
REPLICASBAGFORSALE.COM, and
REPLICASCHEAPSTORE.COM; CHEAPMUCH.RU
aka LUXURYSTAND.RU; COEEBAGS.SU aka
REPLICACLUBS.RU; E8BAGC.COM aka E8BAGZ.CO;
ESSENCEOFLUXURY.CO aka MYBAGO.RU and
SOHANDBAG.COM; FAKECU.COM aka
FAUXBAGSSELLING.COM;
FAKELUXURYSTORE.RU aka SHOESREPLICA.RU,
TOPLUXURYFAKE.RU, and YUPOOREPLICA.RU;
FASHIONFAKESELL.RU aka
TOPREPLICALUXURY.RU; LOUISETOP.COM aka
SHAWBAGS.COM; THEREALCRISANDCOCO.CC aka
KRISANDKIKO.CC; TIKHUB.RU aka TIKHUBS.RU;
3HREPLICACHANEL.COM; BOTA365.TOP;
CFBUY.RU; CHANGUC.RU; COSPBAG.COM;
DESIGNBAGS.US; DISCOUNTBUYPLAT.COM;
EVERY-DESIGNER.MD; GAPFASHIONS.COM;
LUXEONLYS.COM; LUXURYCOPYBAGS.COM;
LUXURYROSIE.COM; PERFECTKICK.ORG;
PERFECTWATCHEN.COM; PTSHOESCLUB.COM;
PURSEFITS.COM; REPLICAWHOLESALE.RU;
SALLYSHOP.RU; SELLBAGSWALLETS.COM;
SELLREPLICA.RU; SOLEOFFER.ORG;
TRACOBSHOP.RU; VTRTIMEWATCH.IO;
WAROOM.RU; WOWJEWELRY.CN;
BABAREPLICA.COM; and MANUALCHANEL.COM,
Each an Individual, Business Entity, or Unincorporated
Association,

       Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Chanel, Inc. ("Chanel" or "Plaintiff") hereby sues Defendants, the Individuals, Business Entities, or Unincorporated Associations identified in the caption above and set forth on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Chanel's trademarks within this district through at least the fully interactive commercial Internet websites operating under the domain names set forth on Schedule "A" hereto (the "Subject Domain Names"). In support of its claims, Chanel alleges as follows:

## JURISDICTION AND VENUE

1.       This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), and 1125(d), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Chanel's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.       Defendants are subject to personal jurisdiction in this district because they operate commercial websites accessible in this district, conduct business by registering and maintaining the Subject Domain Names within the United States, and/or direct business activities towards consumers throughout the United States, including within the State of Florida and this district,

through at least the fully-interactive[1] commercial Internet websites accessible and doing business in Florida and operating under the Subject Domain Names. Alternatively, based on their contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell and/or selling infringing products into this district.

### THE PLAINTIFF

4.     Chanel is a corporation organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019. Chanel operates boutiques throughout the world, including within this district. Chanel is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those identified below. Chanel offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States. Defendants, through the advertising, sale, and offer to sell counterfeit and infringing Chanel branded products, are directly and unfairly competing with

---

[1] Some Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully interactive, commercial websites operating under other Subject Domain Names, from which consumers can complete purchases. Accordingly, the web pages for the Subject Domain Names which operate as redirecting websites are included with the web pages to which those sites redirect, as shown in Composite Exhibit "2" hereto.

Chanel's economic interests in the United States, including the State of Florida and causing Chanel irreparable harm and damage within this jurisdiction. Chanel regularly enforces its intellectual property rights and authorized this action be brought in its name.

5.     Like many other famous trademark owners, Chanel suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Chanel's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce websites.

6.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Chanel expends significant monetary and other resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms and social media websites, has created an environment that requires companies, such as Chanel, to expend significant resources across a wide spectrum of efforts to protect both consumers and it from confusion and the erosion of the goodwill embodied in the Chanel brand.

## THE DEFENDANTS

7.     Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, business entities of unknown makeup, and/or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers

throughout the United States, including within this district, through the simultaneous operation of, at least, the fully interactive commercial Internet websites existing under the Subject Domain Names.

8.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A" hereto.

9.      Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit branded products as alleged herein, often as partners, co-conspirators and/or suppliers.

10.     Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit versions of Chanel's branded goods while shrinking the legitimate marketplace for Chanel's genuine branded goods. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Chanel's famous name and associated trademarks, and the destruction of the legitimate market sector in which Chanel operates.

11.     Defendants are the past and present controlling forces behind the operation of the Internet websites operating under, at least, the Subject Domain Names.

12.     Defendants directly engage in unfair competition with Chanel by (i) advertising, offering for sale, and/or selling goods, each using counterfeits and infringements of one or more of Chanel's trademarks to consumers within the United States and this district through at least the interactive commercial Internet websites operating under the Subject Domain Names and corresponding website Uniform Resource Locator ("URL"), and any additional domains and

websites and corresponding website URLs not yet known to Chanel, and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Chanel's legitimate marketplace for its genuine goods. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit Chanel branded goods into the State, and by operating an illegal marketplace enterprise which impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

13.     Defendants have registered, established, or purchased and maintained the Subject Domain Names and the websites operating thereunder. Defendants may have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information during the registration or maintenance process related to their respective Subject Domain Names. Many Defendants have registered and/or maintained some of their Subject Domain Names for the sole purpose of engaging in unlawful counterfeiting and/or infringing activities.

14.     Defendants will likely continue to register or acquire new domain names, and consequently new URL addresses in connection therewith, for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Chanel's trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Chanel's expense unless preliminarily and permanently enjoined.

15.     Defendants' Subject Domain Names and corresponding website URLs, and any other alias domain or e-commerce store names and corresponding websites' URLs, used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of

Chanel's trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Chanel. Moreover, Defendants are using Chanel's famous name and trademarks to drive Internet consumer traffic to their websites operating under the Subject Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Chanel's legitimate marketplace and intellectual property rights at Chanel's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

16.     Chanel is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |
| ℂℂ | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| ℂℂ | 1,501,898 | August 30, 1988 | IC 006 - Keychains<br>IC 014 - Costume Jewelry<br>IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 - Brooches and Buttons for Clothing |

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| ⧜ | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| J12 | 2,559,772 | April 9, 2002 | IC 014 - Timepieces; namely, Watches, and Parts Thereof |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| ⧜ | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers and Cell Phones IC 018 - Key Cases |
| ⧜ | 4,241,822 | November 13, 2012 | IC 025 - For Clothing, namely, Coats, Jackets, Dresses, Tops, Blouses, Sweaters, Cardigans, Skirts, Vests, Pants, Jeans, Belts, Swim Wear, Pareos, Hats, Scarves, Ties, Gloves, Footwear, Hosiery |

The Chanel Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Chanel Marks are attached hereto as Composite Exhibit "1."

17.     The Chanel Marks have been used in interstate commerce to identify and distinguish Chanel's high-quality goods for an extended period of time.

18.     The Chanel Marks have been used in commerce by Chanel long prior in time to Defendants' use of copies of those Marks. The Chanel Marks have never been assigned or licensed to any of the Defendants in this matter.

19.     The Chanel Marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned. Chanel has carefully monitored and policed the use of the Chanel Marks.

20.     The Chanel Marks are well-known and famous and have been for many years. Chanel expends substantial resources developing, advertising and otherwise promoting the Chanel Marks. The Chanel Marks qualify as famous marks as that term is used in 15 U.S.C. § 1125(c)(1).

21.     Further, Chanel extensively uses, advertises, and promotes the Chanel Marks in the United States in association with the sale of high-quality goods. Chanel expends enormous resources promoting the Chanel Marks and products bearing the Chanel Marks. In recent years, annual sales of products bearing the Chanel Marks have totaled in the hundreds of millions of dollars within the United States alone.

22.     As a result of Chanel's efforts, members of the consuming public readily identify merchandise bearing or sold using the Chanel Marks, as being high quality goods sponsored and approved by Chanel.

23.     Accordingly, the Chanel Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

24.     Genuine goods bearing and/or using the Chanel Marks are widely legitimately advertised and promoted by Chanel, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media

platforms, is important to Chanel's overall marketing and consumer education efforts. Thus, Chanel expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Chanel and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Chanel brand and the goods sold thereunder, and the problems associated with the counterfeiting of Chanel's trademarks. Similarly, many of Defendants' websites are indexed on search engines and compete directly with Chanel for space and consumer attention in search results.

**Defendants' Infringing Activities**

25.     At all times relevant hereto, Defendants in this action have had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

26.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Chanel Marks (the "Counterfeit Goods") through at least the fully interactive commercial Internet websites operating under the Subject Domain Names, including the corresponding URL addresses. True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names displaying the Chanel branded items offered for sale and located at several of the URLs for the Subject Domain Names, are attached hereto as Composite Exhibit "2." Specifically, Defendants are each using the Chanel Marks to initially attract online consumers and drive them to Defendants' e-commerce store websites operating under the Subject Domain Names. Defendants are each using identical copies of one or more of the Chanel Marks for different quality goods. Chanel has used the Chanel Marks

extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Chanel's merchandise.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Chanel's genuine goods. Defendants, are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Chanel despite Defendants' knowledge that they are without authority to use the Chanel Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce store websites are genuine goods originating from, associated with, and/or approved by Chanel.

28.     Defendants advertise their e-commerce store websites, including their Counterfeit Goods offered for sale, to the consuming public via at least the commercial websites operating under the Subject Domain Names. In so doing, Defendants improperly and unlawfully use one or more of the Chanel Marks without Chanel's permission.

29.     Most Defendants are concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of the Chanel Marks. Specifically, Defendants are using counterfeits and infringements of Chanel's famous name and the Chanel Marks to make their websites selling unauthorized goods appear more relevant and attractive to consumers searching for both Chanel and non-Chanel goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Chanel's genuine goods. Defendants are

causing, individual, concurrent and indivisible harm to Chanel and the consuming public by (i) depriving Chanel of its right to fairly compete for space online and within search engine results and reducing the visibility of Chanel's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Chanel Marks, (iii) increasing Chanel's overall cost to market its goods and educate consumers about its brand via the Internet, and/or (iv) maintaining an illegal marketplace enterprise, which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm Chanel with impunity.

30.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Chanel and the consuming public for Defendants' own benefit.

31.     Defendants' use of the Chanel Marks, including the promotion and advertisement, reproduction, distribution, sale, and/or offering for sale of their Counterfeit Goods, is without Chanel's consent or authorization.

32.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Chanel's rights for the purpose of trading on Chanel's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Chanel and the consuming public will continue to be harmed.

33.     Defendants' above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive

customers, the public, and the trade into believing there is a connection or association between Chanel's genuine goods and Defendants' Counterfeit Goods, which there is not.

34.     Moreover, at least Defendant Numbers 1, 3, 14, and 40 have each registered, at least, one of their respective Subject Domain Name(s) using marks that are nearly identical and/or confusingly similar to at least one of the Chanel Marks (the "Cybersquatted Subject Domain Names").

35.     Defendant Numbers 1, 3, 14, and 40 do not have, nor have they ever had, the right or authority to use the Chanel Marks for any purpose. Further, the Chanel Marks have never been assigned or licensed to be used on any of the websites, including the websites operating under the Cybersquatted Subject Domain Names.

36.     Defendant Numbers 1, 3, 14, and 40 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

37.     Defendant Numbers 1, 3, 14, and 40 have never used the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

38.     Defendant Numbers 1, 3, 14, and 40 have not made any bona fide non-commercial or fair use of the Chanel Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

39.     Defendant Numbers 1, 3, 14, and 40 have intentionally incorporated at least one of the Chanel Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Chanel's genuine website to their own Internet websites for commercial gain.

40.    Given the visibility of Defendants' various websites and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Chanel and the overall consumer market in which they operate because of Defendants' concurrent actions.

41.    Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Chanel.

42.    Chanel has no adequate remedy at law.

43.    Chanel is suffering irreparable injury because of Defendants' unauthorized and wrongful use of the Chanel Marks. If Defendants' counterfeiting and infringing, cybersquatting, and unfairly competitive activities, and their illegal marketplace enterprise, are not preliminarily and permanently enjoined by this Court, Chanel and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

44.    The harm sustained by Chanel has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance, and very existence of Defendants' illegal marketplace enterprise.

**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT
PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

45.    Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 44 above.

46.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Chanel

Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

47.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Chanel Marks. Defendants are continuously infringing and inducing others to infringe the Chanel Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and/or infringing Chanel branded goods.

48.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

49.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Chanel and are unjustly enriching Defendants at Chanel's expense.

50.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Chanel Marks in violation of Chanel's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     Chanel has suffered and will continue to suffer irreparable injury while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

52.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 44 above.

53.     Defendants' Counterfeit Goods bearing and/or using, offered for sale, and sold using copies of one or more of the Chanel Marks have been widely advertised and offered for sale throughout the United States via at least the interactive commercial Internet websites operating under the Subject Domain Names.

54.     Defendants' Counterfeit Goods bearing and/or using, offered for sale, and sold using copies of one or more of the Chanel Marks are virtually identical in appearance to Chanel's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

55.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Chanel's detriment.

56.     Defendants have each authorized infringing uses of one or more of the Chanel Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

57.     Additionally, many Defendants are simultaneously using counterfeits and infringements of one or more of the Chanel Marks to unfairly compete with Chanel and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Chanel of valuable marketing and educational space online which would

otherwise be available to Chanel, and (ii) reducing the visibility of Chanel's genuine goods on the World Wide Web and across social media platforms.

58.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     Chanel has no adequate remedy at law and has sustained both individual and indivisible injury caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Chanel will continue to suffer irreparable injury to its goodwill and business reputation while Defendants are earning a substantial profit.

### COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))
(Against Defendant Numbers 1, 3, 14, and 40 only)

60.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 44 above.

61.     At all times relevant hereto, Chanel has been and still is the owner of the rights, title, and interest in and to the Chanel Marks.

62.     Defendant Numbers 1, 3, 14, and 40 have acted with the bad faith intent to profit from the Chanel Marks and the goodwill associated with the Chanel Marks by registering and using the Cybersquatted Subject Domain Names.

63.     The Chanel Marks were already distinctive and famous at the time Defendant Numbers 1, 3, 14, and 40 registered the Cybersquatted Subject Domain Names.

64.     Defendant Numbers 1, 3, 14, and 40 have no intellectual property rights in or to the Chanel Marks.

65.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the Chanel Marks.

66.     Defendant Numbers 1, 3, 14, and 40's registration and maintenance of the Cybersquatted Subject Domain Names are done with knowledge and constitutes a willful violation of Chanel's rights in the Marks. At a minimum, the conduct of these Defendants constitutes reckless disregard for and willful blindness to Chanel's rights.

67.     Defendant Numbers 1, 3, 14, and 40's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

68.     Chanel has no adequate remedy at law.

69.     Chanel has suffered and will continue to suffer irreparable injury while Defendants 1, 3, 14, and 40 profit due to the above-described activities if those Defendants are not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW UNFAIR COMPETITION

70.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 44 above.

71.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks which are virtually identical to one or more of the Chanel Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Chanel sells its genuine goods, in violation of Florida's common law of unfair competition.

72.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Chanel Marks. Defendants are also each using counterfeits and infringements of one or more of the Chanel Marks to unfairly compete with Chanel and others for (i) space in search

engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

73.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among the consumers as to the origin and quality of Defendants' e-commerce store websites as a whole and all products sold therein by their use of the Chanel Marks.

74.     Chanel has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions while Defendants are earning a substantial profit.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

75.     Chanel hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 44 above.

76.     Chanel is the owner of all common law rights in and to the Chanel Marks.

77.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of the Chanel Marks.

78.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Chanel Marks.

79.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Chanel Marks.

80.     Chanel has no adequate remedy at law and is suffering irreparable injury because of Defendants' actions while Defendants are earning a substantial profit.

## PRAYER FOR RELIEF

81.     WHEREFORE, Chanel demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Chanel Marks; from using the Chanel Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Chanel; from falsely representing themselves as being connected with Chanel, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Chanel; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Chanel Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Chanel, or in any way endorsed by Chanel and from offering such goods in commerce; from engaging in search engine optimization strategies

using colorable imitations of Chanel's name or trademarks; and from otherwise unfairly competing with Chanel.

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Chanel's request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Chanel to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Chanel Marks.

e.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Chanel's request, the Defendants and the top level domain (TLD) Registry for each of the Subject Domain Names, and any other

domains used by Defendants, or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and/or infringements of the Chanel Marks, to the IP addresses where the associated websites are hosted.

f.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Chanel's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting and/or infringement of the Chanel Marks at issue to Chanel's control so they may no longer be used for unlawful purposes.

g.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Chanel to request any Internet search engines which are provided with notice of the injunction, to permanently disable, de-index or delist the specific URLs identified by Chanel based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole and via the URLs identified by Chanel.

h.       Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their Subject Domain Name(s) and any other domain names used by Defendants to Chanel and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s) and any other domain names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order requiring Defendants to account to and pay Chanel for all profits earned from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Chanel be trebled, as provided for under 15 U.S.C. § 1117, or that Chanel be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

k.      Entry of an order requiring Defendant Numbers 1, 3, 14, and 40 to account to and pay Chanel for all profits resulting from those Defendants' cybersquatting activities and that the profit award to Chanel be trebled, as provided for under 15 U.S.C. § 1117, or that Chanel be awarded statutory damages from Defendant Numbers 1, 3, 14, and 40 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

l.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Chanel's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

m.      Entry of an award of pre-judgment interest on the judgment amount.

n.      Entry of an Order requiring Defendants, at Chanel's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

o.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: October 19, 2022.         Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.net
E-mail: leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff CHANEL, INC.

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | replicachanelproduct.com *aka* luxuryreplicasbag.com |
| 2 | bagoneer.com *aka* faxbagx.com |
| 3 | cheapreplicaspurses.com *aka* copyhandbagsshop.com fakechanelshopping.com popularitybags.com replicasbagforsale.com replicascheapstore.com |
| 4 | cheapmuch.ru *aka* luxurystand.ru |
| 5 | coeebags.su *aka* replicaclubs.ru |
| 6 | e8bagc.com *aka* e8bagz.co |
| 7 | essenceofluxury.co *aka* mybago.ru sohandbag.com |
| 8 | fakecu.com *aka* fauxbagsselling.com |
| 9 | fakeluxurystore.ru *aka* shoesreplica.ru topluxuryfake.ru yupooreplica.ru |
| 10 | fashionfakesell.ru *aka* topreplicaluxury.ru |
| 11 | louisetop.com *aka* shawbags.com |
| 12 | therealcrisandcoco.cc *aka* krisandkiko.cc |
| 13 | tikhub.ru *aka* tikhubs.ru |
| 14 | 3hreplicachanel.com |
| 15 | bota365.top |
| 16 | cfbuy.ru |
| 17 | changuc.ru |
| 18 | cospbag.com |
| 19 | designbags.us |

| 20 | discountbuyplat.com |
|----|---------------------|
| 21 | every-designer.md |
| 22 | gapfashions.com |
| 23 | luxeonlys.com |
| 24 | luxurycopybags.com |
| 25 | luxuryrosie.com |
| 26 | perfectkick.org |
| 27 | perfectwatchen.com |
| 28 | ptshoesclub.com |
| 29 | pursefits.com |
| 30 | replicawholesale.ru |
| 31 | sallyshop.ru |
| 32 | sellbagswallets.com |
| 33 | sellreplica.ru |
| 34 | soleoffer.org |
| 35 | tracobshop.ru |
| 36 | vtrtimewatch.io |
| 37 | waroom.ru |
| 38 | wowjewelry.cn |
| 39 | babareplica.com |
| 40 | manualchanel.com |